

# Thompson Wigdor LLP ATTORNEYS AND COUNSELORS AT LAW

85 Fifth Avenue
New York, NY 10003
Tel 212.257.6800
Fax 212.257.6845
www.thompsonwigdor.com

**Tanvir H. Rahman**
trahman@thompsonwigdor.com

August 22, 2013

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE    8-27-13



**VIA US MAIL**

Honorable P. Kevin Castel
United States District Court
Southern District of New York
Thurgood Marshall United States Courthouse
500 Pearl Street
New York, NY 10007

      Re:   *Ashleigh Baldwin v. Gerson Lehrman Group, Inc.* 12-cv-6169

Dear Judge Castel:

We represent Plaintiff Ashleigh Baldwin ("Plaintiff" or "Ms. Baldwin") in the above-referenced matter. We, together with counsel for Defendant Gerson Lehrman Group, Inc. ("GLG"), write to inform the Court that the parties have reached a settlement of this matter, subject to the Court's approval, and renew this letter application seeking Your Honor's approval of the attached fully-executed proposed Agreement dismissing and waiving all of Ms. Baldwin's Fair Labor Standards Act (FLSA) claims (and other claims identified in the Agreement) that were or could have been made against Defendant. (See Exhibit 1). The parties do not seek to keep the terms of the Agreement confidential.

## I.    **Introduction**

The parties and their counsel have considered that the interests of all concerned are best served by compromise, settlement and dismissal of Plaintiff's FLSA claims with prejudice, in exchange for consideration as set forth in the Agreement. The Agreement is a result of arms-length bargaining between counsel for the parties. The Agreement reflects a desire to fully and finally settle and compromise Plaintiff's FLSA claims as outlined more specifically in the attached Agreement.

The parties have concluded that the Agreement is fair, reasonable, adequate, and in the parties' mutual best interests. For these reasons, and based on the reasons set forth below, the parties jointly and respectfully renew their request that the Court enter an Order approving the settlement as fair and reasonable, and dismissing this action with prejudice. A Proposed

# Thompson Wigdor LLP ATTORNEYS AND COUNSELORS AT LAW

Honorable P. Kevin Castel
August 22, 2013
Page 2

Stipulation and Order of Voluntary Dismissal With Prejudice signed by counsel for the parties is attached at the end of the Agreement. See Exhibit A to Exhibit 1.

## II.    Background of the Claims

Plaintiff was employed by GLG as a "Research Associate," a position classified as overtime exempt until approximately January 1, 2009. As a result, Plaintiff, who alleges that she regularly worked in excess of 40 hours per week, was not paid overtime compensation at a rate of one and one-half times her regular rate of pay for all hours she worked in excess of 40 per week for the period of September 11, 2007 through December 31, 2008 (the "FLSA Period").

On or by January 1, 2009, GLG reclassified its Research Associates from overtime exempt to overtime non-exempt, although Plaintiff alleges that the job duties and assignments of GLG Research Associates remained materially the same. GLG did not compensate Plaintiff for the overtime compensation that she claims she was owed for her work prior to 2009.

## III.    The Litigation

Plaintiff had previously been an opt-in plaintiff in a proposed FLSA class/collective action against GLG which was also before this Court entitled Cohen v. Gerson Lehrman Group, Inc., 09-cv-4352 (PKC). The Cohen matter resulted in a class-wide settlement of unpaid overtime claims held by GLG's Research Associates employed in New York. However, Plaintiff did not work in New York and thus could not be a part of the Cohen class. As such, the Plaintiffs in Cohen proposed, without objection by GLG, that Plaintiff receive an enhancement award which would come out of the common settlement fund created to resolve the Cohen matter, in recognition of Plaintiff's contributions on behalf of the class, and her involvement in the matter. However, after Your Honor declined to approve the proposed enhancement award to Plaintiff, the Court permitted Plaintiff to bring an individual action against GLG seeking recovery for her unresolved FLSA claims.

On August 19, 2012, Plaintiff commenced suit against GLG alleging a single claim of failure to pay overtime under the FLSA. On August 29, 2012, the Court ordered that the action be stayed pending the outcome of Plaintiff's appeal in Cohen. On May 24, 2013, the Court dissolved the stay after the Second Circuit affirmed this Court's rulings in Cohen. The parties have not engaged in any additional discovery in this matter, having already gone through extensive discovery in the Cohen matter.

**Thompson Wigdor LLP** ATTORNEYS AND COUNSELORS AT LAW

Honorable P. Kevin Castel
August 22, 2013
Page 3

## IV.   The Proposed Settlement Is Fair and Reasonable

### (1)   Overview of Applicable Law

It is settled law that employees and employers may settle private lawsuits for compensation due under the FLSA pursuant to a judicially supervised stipulated settlement.  Manning v. N.Y. Univ., No. 98 Civ. 3300 (NRB), 2001 U.S. Dist. LEXIS 12697 (S.D.N.Y. August 21, 2001), aff'd, 299 F.3d 156 (2d Cir. 2002), cert. denied, 123 S. Ct. 2092 (2003) (citing Jarrard v. Southeastern Shipbuilding Corp., 163 F.2d 960, 961 (5th Cir. 1947)).

The Court may approve a settlement of FLSA claims upon its determination that the settlement is fair and reasonable.  See, e.g., Johnson v. Brennan, 10 Civ. 4712 CM, 2011 WL 4357376, at *12 (S.D.N.Y. Sept. 16, 2011) ("If the proposed settlement reflects a reasonable compromise over contested issues, the court should approve the settlement.").  One factor that the Court should consider when reviewing a settlement of FLSA claims is whether there exists a *bona fide* dispute as to the amount and/or right to such unpaid wages.  Jarrard, 163 F.2d at 961.

The parties have differing opinions regarding the merits of Plaintiff's FLSA claims (*e.g.,* whether Plaintiff was an exempt "administrative" employee during the FLSA period), as well as the extent of Plaintiff's damages (*e.g.,* the number of hours Plaintiff worked, whether the proper method of calculating the amount of overtime Plaintiff is owed should be based on the so-called "fluctuating workweek" method or the "half-time rate" method, whether Defendant's purported FLSA violations were "willful" and whether they justify liquidated damages, etc.).  However, in the interests of compromise, and to prevent further costly and time-consuming litigation, the parties agree that the proposed settlement is fair and reasonable.  The parties recognize the risks and costs inherent in further litigation and pursuing this matter through trial on the merits and potential appeals.  Given the consideration offered by Defendant under the Agreement, coupled with the numerous *bona fide* disputed issues as to the amount and right to the wages and other damages sought herein, the parties jointly believe that the proposed settlement is fair and reasonable, and should be approved by the Court.

### (2)   The Amount of the Settlement Is Fair

Pursuant to the Agreement, Plaintiff will receive Fifteen Thousand Dollars and No Cents $15,000.00 (see Exhibit 1, ¶ 2) in compensation for the alleged unpaid overtime pay, with $7,500.00 representing the amount Plaintiff alleged she is owed in back wages, and $7,500.00 representing liquidated damages she alleged should be assessed against Defendant.  Plaintiff's attorneys are not seeking attorneys' fees pursuant to the fee shifting provisions of the FLSA.

**Thompson Wigdor LLP** ATTORNEYS AND COUNSELORS AT LAW

Honorable P. Kevin Castel
August 22, 2013
Page 4

The settlement amount assumes, under a "half-time" method of unpaid overtime calculation, that Plaintiff worked approximately **12** hours of overtime each and every of the 68 workweeks she worked for Defendant during the FLSA Period. This figure is based on Plaintiff's weekly salary during the FLSA Period of approximately $961.54, which rendered her regular hourly rate of pay (based on a 52-hour workweek) approximately $18.49, and half-time overtime rate approximately $9.25. This amount also assumed that Plaintiff would be entitled to liquidated damages in an amount equal to that which she claims to be entitled as unpaid overtime wages. The parties believe that this is a fair and reasonable amount to settle Plaintiff's claims against Defendant.

   (3)   <u>Bona Fide Disputed Issues Exist</u>

In addition to the amount of the settlement being fair, the settlement is reasonable given the numerous *bona fide* issues in dispute between the parties as set forth above, including:  (i) whether Defendants' alleged violations were "willful" within the meaning of the FLSA; (ii) the exempt status of Plaintiff during the FLSA Period; (iii) the correct method of calculating unpaid overtime; and (iv) the number of hours Plaintiff worked.  Given these *bona fide* issues in dispute, the parties jointly believe that the proposed settlement is fair and reasonable.

The parties' respectfully renew their request that the Court approve the settlement in this matter as set forth above, and issue the Stipulation and Order of Voluntary Dismissal With Prejudice attached at the end of the Agreement.

Respectfully submitted,

Tanvir H. Rahman

cc:   Michael Puma, Esq. (via email)

# Exhibit 1

## CONFIDENTIAL SETTLEMENT AGREEMENT AND RELEASE

This Confidential Settlement Agreement and Release ("Agreement") is made and entered into by and between Ashleigh Baldwin ("Baldwin"), and Gerson Lehrman Group, Inc. ("GLG") (hereinafter referred to collectively as the "Parties").

WHEREAS, Ms. Baldwin was employed by GLG from approximately September 2007 through March 8, 2013; and

WHEREAS, on or around April 12, 2010, Baldwin consented to opt into the civil action in the United States District Court for the Southern District of New York captioned *Jeffrey Cohen, et al. v. Gerson Lehrman Group, Inc.*, (hereinafter referred to as the "Cohen Civil Action"), Docket Number 1:09-cv-04352-PKC; and

WHEREAS, on or around July 10, 2012, Baldwin's claims in the Cohen Civil Action were dismissed without prejudice; and

WHEREAS, on or around August 10, 2012, Baldwin filed a civil action in the United States District Court for the Southern District of New York captioned *Ashleigh Baldwin v. Gerson Lehrman Group, Inc.*, (hereinafter referred to as the "Baldwin Civil Action"), Docket Number 1:12-cv-6169-PKC; and

WHEREAS, GLG has denied and continues to deny any liability or allegations of wrongdoing of any kind; and

WHEREAS, the Parties mutually desire to settle and terminate the Baldwin Civil Action and any and all claims that do or may exist in the past or present, but not in the future, which settlement shall not be deemed or construed to be – and which Baldwin agrees not to assert in any forum to be – an admission of liability or wrongdoing by GLG, but which constitutes a good faith settlement which is being entered into solely to avoid the uncertainty and costs of further



litigation.

       **IT IS HEREBY AGREED**, among and between the Parties, as follows:

       1.     Baldwin on behalf of herself and her heirs and executors, for and in consideration of the payments described in paragraph 2 below, and the other consideration set forth herein, and intending to be legally bound, does hereby **RELEASE AND FOREVER DISCHARGE** GLG and its past, present, and former parents, and subsidiaries if any, and all of its and their officers, directors, employees, attorneys, agents, representatives, insurers, and benefits plans, and its and their respective predecessors, successors and assigns, heirs, executors, and administrators (hereinafter collectively "Releasees"), from all causes of action, suits, debts, claims and demands whatsoever, in law or in equity, which Baldwin ever had or now has, or which her heirs, executors, or administrators may have, by reason of any matter, cause, or thing whatsoever, whether known or unknown, occurring at any time in the past up to and including the date on which Baldwin executes this Agreement, and particularly, but without limitation of the foregoing general terms, all claims which were raised or could have been raised by her in the Baldwin Civil Action regarding her employment and compensation by GLG, the terms and conditions of such employment, the conclusion of such employment, including, without limitation, all claims arising under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e et seq.; the Civil Rights Act of 1866, 42 U.S.C. § 1981, as amended; the Americans with Disabilities Act ("ADA"), 42 U.S.C. §12101 et seq.; the ADA Amendments Act ("ADAAA"), Pub. L. 110-325; the Age Discrimination in Employment Act (the "ADEA"), as amended, 29 U.S.C. § 621 et seq.; the Employee Retirement Income Security Act of 1973 ("ERISA"), 29 U.S.C. §1001 et seq.; the New York Labor Law ("NYLL") §§ 160 et seq., 190 et seq. (including, but not limited to § 191, § 193 and § 198), 215, 650, 12 N.Y.C.R.R. §§ 142-1.1.



et seq. (including, but not limited to, § 142-2.2 and § 142-2.14); the Family and Medical Leave

Act ("FMLA"), 29 U.S.C. §2601 et seq.; any and all other claims for discrimination, harassment,

and retaliation, attorneys' fees, injunctive relief, or penalties; and all other claims under any

federal or state common law, statutory, or regulatory provision, now or hereafter recognized, and

all claims for attorneys' fees and costs. This Agreement is effective without regard to the legal

nature of the claims raised and without regard to whether any such claims are based upon tort,

equity, implied or express contract, or discrimination of any sort. This Agreement is not

intended to apply to claims that cannot be waived by private agreement under applicable law.

For instance, this Agreement is not intended to apply to any claims that Baldwin may have for

any benefit entitlements that are vested as of the date of the execution of this Agreement

pursuant to the terms of a GLG-sponsored benefit plan governed by ERISA. GLG shall be

entitled to recover its reasonable attorneys' fees and costs incurred in connection with any

successful action or other effort to enforce the foregoing release, including such fees and costs

incurred in defending against any released claims.

Notwithstanding anything to the contrary herein, it is expressly agreed and understood

that this Release shall not operate as a bar to any claim, suit or cause of action which Baldwin

may have that arises from any action, inaction, conduct or misconduct by GLG that occurs

after the date on which Baldwin executes this Agreement, and that Baldwin specifically retains

her right to bring or file any such claim, suit or cause of action.

2.      In consideration of the execution of this Agreement by Baldwin, and her

agreement to be legally bound by its terms, and provided she complies with her obligations under

the Agreement, GLG will provide to Thompson Wigdor LLP ("Baldwin's counsel"):

a.  A check in the amount of Seven Thousand Five Hundred Dollars and
    No Cents ($7,500.00) representing payment of claimed back wages,



which amount shall be reported on an appropriate Form 1099 for tax year 2013, made payable to "Ashleigh Baldwin."

b. A check in the amount of Seven Thousand Five Hundred Dollars and No Cents ($7,500.00), made payable to "Ashleigh Baldwin," representing payment for claimed liquidated damages on claimed back wages, which amount shall be reported on appropriate Form 1099 for tax year 2013.

c. Baldwin shall be solely responsible for declaring these payments to the appropriate taxing authorities and for paying any and all taxes that might be due on these amounts.

3.    The payments described in paragraph 2 above shall be made within ten (10) business days after this Agreement is executed and returned to Michael J. Puma, Morgan, Lewis & Bockius LLP, 1701 Market Street, Philadelphia, PA 19103, and the case is dismissed.

4.    Baldwin agrees that the payments in paragraph 2 will constitute full consideration for the promises herein and that she is not entitled to any other payments, benefits, or other consideration, including but not limited to costs or attorneys' fees, from GLG or any of the other Releasees for entering into this Agreement.

5.    Baldwin acknowledges she has the sole responsibility for payment of all federal, state and local taxes, if any, with respect to the sum paid under this Agreement to be reported on Form 1099s, and she represents that she has not relied upon any advice or representation from GLG or its counsel concerning the taxable or nontaxable nature of such sum payable in paragraph 3. Baldwin shall defend, indemnify and hold GLG harmless from any and all claims for taxes, interest and penalties, if any, in connection with the payments to be made to Baldwin under this Agreement.

6.    In further consideration of the undertakings by GLG set forth herein, Baldwin represents that she has no other pending lawsuits or administrative charges against any of the Releasees. It is expressly agreed and understood that the performance of GLG's

obligations under this Agreement are contingent upon the dismissal with prejudice of the Baldwin Civil Action based on the filing and approval of the Stipulation of Dismissal attached as Exhibit A, as well as any other lawsuits or administrative charges against any of the Releasees.

7.    Except as set forth herein, it is expressly agreed and understood that GLG does not have, and will not have, any obligation to provide Baldwin, or any counsel or individual representing Baldwin in the Cohen or Baldwin Civil Actions, including Thompson Wigdor LLP and Hal Pitkow, with any payments, benefits or consideration other than those recited in paragraph 2 above.

8.    Nothing contained in this Agreement is an admission or evidence of any wrongdoing or liability on the part of GLG, or of any violation of any federal, state, local or municipal statute, regulation or principle of common law or equity.  GLG expressly denies any wrongdoing of any kind in connection with Baldwin's compensation and employment.

9.    Baldwin covenants that she has not communicated or disclosed, and she will not hereafter communicate or disclose in the future, the fact or terms of this Agreement or any discussions regarding the negotiation of this Agreement to any persons other than her present attorneys, accountants, tax or financial consultants and/or immediate family members, state and federal tax authorities or other persons as may be required by law, provided, however, that any such person or entity to whom disclosure is made first agrees to keep such information strictly confidential pursuant to this Agreement.  This commitment is a material part of this Agreement, and the performance of GLG's obligations under this Agreement is specifically contingent upon Baldwin's obligations described in this paragraph.  Notwithstanding the foregoing, nothing in this paragraph, or elsewhere in this Agreement, is intended to prevent or prohibit Baldwin from: (i) providing information regarding Baldwin's employment relationship with GLG as may be

required by law or legal process; or (ii) cooperating, participating, or assisting in any government entity investigation or proceeding.

10.   Baldwin agrees not to make any statements to the media, or to publish or post on the internet any critical, denigrating, or disparaging statements, about any Releasee.

11.   GLG has no obligation, contractual or otherwise, to hire, rehire or re-employ Baldwin in the future, and she agrees not to seek or accept re-employment or a contractual relationship with the Releasees.

12.   Should any of the provisions or terms of this Agreement require judicial interpretation, it is agreed that all Parties participated in its preparation and thus it is agreed that the Court interpreting or construing this Agreement shall not apply any presumption that such provision(s) or term(s) shall be more strictly construed against one party by reason of the rule of construction that a document is to be construed more strictly against the party who prepared it.

13.   No promise, inducement, representation or agreement not herein expressed has been made to any party or caused them to enter this Agreement.  The Agreement contains the entire agreement between the Parties, and the terms of the Agreement are contractual and not a mere recital.  This is a fully integrated agreement.  It may not be altered or modified by oral agreement or representation or otherwise except by a writing of subsequent date hereto signed by all Parties in interest.

14.   The provisions and portions of this Agreement are severable.  Should any provision other than paragraph 1 be determined invalid by a court of competent jurisdiction, the Parties agree that it is the Parties' intent to enforce this Agreement, including the provisions of paragraph 1 above, to the fullest extent permissible by law.

15.   Baldwin hereby certifies that:



a. She has signed this Agreement voluntarily and knowingly in exchange for the consideration described herein, which she acknowledges as adequate and satisfactory and beyond that to which she is otherwise entitled;

b. She has been advised by GLG to consult with her attorney before signing this Agreement, and she has consulted with her counsel, Thompson Wigdor, LLP and Hal Pitkow, concerning this Agreement prior to signing the Agreement;

c. None of the Releasees have made any representations to Baldwin concerning the terms or effects of this Agreement other than those contained herein; and

IN WITNESS WHEREOF, and intending to be legally bound hereby, the Parties have executed the foregoing Agreement.

I HAVE READ THIS AGREEMENT.  I UNDERSTAND THAT I AM GIVING UP IMPORTANT RIGHTS AS SET FORTH IN SECTION 1 ABOVE.  I AM AWARE OF MY RIGHT TO CONSULT WITH AN ATTORNEY OF MY OWN CHOOSING REGARDING THIS AGREEMENT AND I HAVE DONE SO.  I SIGN THIS AGREEMENT FREELY AND VOLUNTARILY, WITHOUT DURESS OR COERCION, AND WITH A FULL UNDERSTANDING OF ALL TERMS OF THE AGREEMENT.

ASHLEIGH BALDWIN

Sworn to and subscribed
before me this 26TH day
of July    2013.

Notary Public

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
HAL C. PITKOW, Notary Public
Upper Makefield Twp., Bucks County
My Commission Expires April 3, 2016

GERSON LEHRMAN GROUP, INC.

DATE: _____

By: _____
Laurence Herman